ROBERTSON et al. v. ALASKA JUNEAU
GOLD MINING CO.

No. 11255.

Circuit Court of Appeals, Ninth Circuit.

Nov. 5, 1946.

Gladstein, Andersen, Resner, Sawyer & Edises, Bertram Edises and Ewing Sibbett, all of San Francisco, Cal., for appellants.

Wm. E. Colby and Geo. W. Wilson, both of San Francisco, Cal., for appellee.

Before DENMAN, HEALY, and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellee, Alaska Juneau Gold Mining Company, hereinafter called the Company, for many years has carried on a large scale low-grade gold mining operation in Alaska. The recovery from all metals contained in the ore mined varied between 90 and 95 cents per ton. To operate profitably with such low-grade ore required the handling of a large tonnage each day and that costs be kept at a minimum.

Prior to the adoption of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., the regular work day consisted of eight-hour shifts. After the adoption of said Act the Company put in operation a plan similar to that approved in the case of Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, and continued the normal shift at eight hours.

In October, 1939, as a result of demands by the certified labor union representing the employees, a new wage agreement incorporating the so-called "split day" plan was signed by the Company and the union. Under this plan the men continued to work a regular eight-hour daily shift, but the first seven of these hours were designated as "straight time" and the last hour of each day as "overtime". The "straight" or "regular" hourly rate of pay was reduced and for the one hour of daily "overtime" a rate equal to 150% of the new hourly rate was paid, with the result that appellants' daily wage for the eight-hour shift remained substantially the same as it had been prior to the effective date of the Act.

In May, 1940, mindful of the provisions of an Act reducing the total work week to 40 hours- effective in October, 1940, the Company and the union entered into a new contract under which the split day plan was continued. However, due to the fact that the total regular work week under the Act would be 40 hours in October, the split was now 6.6 hours of "regular" time and 1.4 hours of "overtime" each day. The "regular" rate paid for the first 6.6 hours in each day was again reduced so that the total daily wage remained substantially the same.

On December 13, 1940, the Wage and Hour Administration notified the Company that, in the Government's opinion, the split day plan violated the Act, and on May 1, 1941, faced with the threat of a suit against it by the Administrator in West Virginia, the state of its incorporation, the Company discontinued the split day plan, and a consent decree was, by stipulation, entered against it in the District Court. The Company, according to the terms of the stipulation, paid the employees the extra wages due [1] from December 13, 1940 (the date the Wage and Hour Administration notified the Company it considered the plan illegal) to May 1, 1941 (the date the split day plan was discontinued).

The present suit was begun on April 23, 1943, by appellants to recover unpaid wages and liquidated damages during the time the split day plan was in force, from April 23, 1940 [2] to May 1, 1941, less the amounts al-

---

[1] The Company continued to deny liability and entered into the stipulation only to settle the Government's claim against it.

[2] The original complaint, asking unpaid wages and overtime from October 1938, was dismissed by the District Court on the ground that any right to recover unpaid sums under the Act in excess of three years next preceding the commencement of the action was barred by § 338(1), California Code of Civil Procedure.

ready paid, pursuant to the consent decree, covering the period from December 13, 1940 to May 1, 1941.

The District Court held that the split day plans of wage computation and payment were valid and did not constitute a violation of the Fair Labor Standards Act, and entered judgment for the Company.

Since the District Court's decision we have declared a split day plan virtually identical to the plan involved here to be a violation of the Act.[3]

Here, as in the Alaska Pacific case, (see note 3) the Company's split day plan did not base the regular rate "upon the wages received, nor upon the hours actually spent in the normal nonovertime week, nor was the regular rate paid for the first forty hours actually worked." (152 F.2d 814)

Under the October, 1939, contract the first seven hours of a day were called "regular" or "straight" time and the last hour was called "overtime", and under the May, 1940, plan, the split was 6.6 "regular" and 1.6 "overtime". But the regular shift of the regular, normal work day, both before and after the passage of the Act, and during the effective dates of both split day plans under consideration here, was eight hours. It is noteworthy that the May, 1940, contract specifically provides "for the mine a regular shift shall consist of eight hours * * *".

■ Therefore, since the normal work day consisted of eight hours, we must look "not to contract nomenclature" but to all wages normally received for a normal work day to determine the statutory regular rate.[4]

Such is the method adopted by the Supreme Court to determine the regular rate in the Helmerich case, supra: "To compute this regular rate * * * required only the simple process of dividing the wages received for each tour [shift] by the number of hours in that tour [shift]. This regular rate was then applicable to the first 40 hours regularly worked on the tours [shifts] and the overtime rate (150% of the regular rate) became effective as to all hours worked in excess of 40." 323 U.S. 37, 40, 41, 65 S.Ct. 11, 13, 89 L.Ed. 29.

Thus, if one of appellants received $8 for each 8-hour shift, his regular rate would be computed by dividing $8 by 8 hours. This regular rate of $1 per hour must then be paid for the first 40 hours normally and regularly worked, and for all hours in addition to this first 40 he must be paid at the rate of $1.50 per hour.

The vice in all these split day plans is that their so-called "regular" rate is not based on payments regularly made each week for the normal work week and, consequently, their "overtime" rate is not compensation for true overtime, that is, hours worked in excess of the normal work week or work day.

Here, the seven-hour "regular" day, as designated in the split day contract, was an arbitrary, artificial label. The regular, normal work day had always been eight hours prior to the Act, and it remained so afterwards. Consequently, since "parties have decided upon the amount of wages and the mode of payment, the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts." Walling v. Youngerman-Reynolds Hardware Co., 325 U.S. 419, 424, 425, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705.

■ It cannot change the result to say, as the Company does, that the split day plan was not artificial because, under the "7-1 split", if for some reason an employee worked only five hours one day he would be paid only at the "regular" rate for those five hours. The illegality of the plan does not lie in the fact that the Company did not pay the rate designated in its contracts as the "regular rate", but rather in the fact that that contract-designated "regular" rate was not in fact the hourly rate at which men were paid for the normal, regular work day. The contract-designated "regular" rate is artificial in the sense that it is devised so that, when added to the contract-designated "overtime" rate for a certain

3 Walling v. Alaska Pacific Consolidated Mining Co., 9 Cir., 152 F.2d 812; certiorari denied 66 S.Ct. 960; Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29.

4 See Note 3.

number of contract-designated "overtime" hours, it will result in maintaining the employee's total compensation at substantially the same level as his pre-Fair Labor Standards Act compensation.

■ The Act does not necessarily require an increase of wages, nor does it forbid a decrease, so long as the wages paid are above the statutory minimum. But it does require that all "wages * * * or things of value forming part of the normal weekly income" be used to determine the regular rate, and that "that regular rate should then be applied to the first 40 hours worked, and for all hours worked in addition a rate one and one-half times the regular rate must be paid." [5]

■ Nor can it make this split day plan legal under the Act to argue that the plan was adopted in this case only because the employees demanded its adoption. The plan is virtually identical to the plans condemned in Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29, and Walling v. Alaska Pacific Consol. Min. Co., 9 Cir., 152 F.2d 812, certiorari denied 66 S.Ct. 960, and that which is illegal cannot be made legal by contract of the parties.

■ The purpose of the Fair Labor Standards Act is to spread employment and to reduce working hours. The split shift plan does not further the attaining of either of these objectives.

The Company further contends that appellants are equitably estopped to sue for additional wages and liquidated damages since they forced the Company to abandon a legal plan and adopt a split day plan.

Plausible as that argument may appear we are still confronted with the fact that the Act sets certain standards for the determination of compensation which must be met regardless of whether or not the employees are at fault in forcing an invalid plan upon an unwilling employer.

"Any custom or contract falling short of that basic policy [of guaranteeing compensation for all work or employment engaged in by employees covered by the Fair Labor Standards Act], like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights." Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602, 603, 64 S.Ct. 698, 705, 88 L.Ed. 949, 152 A.L.R. 1014.

■ An express agreement to work for less than the basic minimum statutory rates is invalid,[6] and a release given an employer by an employee freeing the employer from further claims under the Fair Labor Standards Act, will not estop the employee from later recovering liquidated damages for unpaid wages and overtime, and attorney's fees under the Act[7] since the employees' rights under § 16(b) of the Act, although conferred on private persons, are statutory rights which affect the public interest and, hence, rights which may not be waived by an employee. Further, acceptance by an employee of payments of regular and overtime wages will not estop him from suing to recover the amount due him when he proves he actually worked longer.[8]

■ We think the employees' right to have their regular rate of compensation (and, consequently, their overtime rates) computed according to the method laid down by the Supreme Court in Walling v. Helmerich & Payne (see note 3), is also a right of this same "private-public character"[9] and, hence, is also a right which cannot be waived, and which the employee cannot be estopped to assert, even though, through his union, he has forced an unwilling employer to adopt the illegal plan.

"The Act clearly contemplates the setting of the regular rate in a bona fide manner through wage negotiations between employer and employee, * * *. But this freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes. Even when

---

[5] See Note 3.

[6] Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682.

[7] Brooklyn Sav. Bank v. O'Neil, 324 U. S. 697, 65 S.Ct. 895, 89 L.Ed. 1296.

[8] De Pasquale v. Williams-Bauer Corp., 2 Cir., 151 F.2d 578, cert. den. 66 S.Ct. 1007.

[9] See Note 7.

wages exceed the minimum prescribed by Congress, the parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regular hourly rate for all hours actually worked in excess of 40." Walling v. Helmerich & Payne, 323 U.S. 37, 42, 65 S.Ct. 11, 14, 89 L.Ed. 29.

This computation of the regular and overtime rates goes to the fundamentals of the Act, and is a basic part of the Congressional policy. The computation of regular and overtime rates must be considered in the same category as an employee's right to the statutory minimum wage.[10]

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

[10] Cf. Lawley & Son Corp. v. South, 1 Cir., 140 F.2d 439, cert. den. 322 U.S. 746, 64 S.Ct. 1156, 88 L.Ed. 1578; Walsh v. 515 Madison Avenue Corp., 181 Misc. 219, 42 N.Y.S.2d 262, affirmed without opinion by Appellate Division, New York Supreme Court, 267 App.Div. 756, 45 N. Y.S.2d 927, affirmed without opinion by New York Court of Appeals, 293 N.Y. 826, 59 N.E.2d 183.