**CITY OF SAN ANTONIO, Appellant,**

v.

**Ernest R. AGUILAR and Florence Acquart, et al., Appellees.**

No. 04–83–00401–CV.

Court of Appeals of Texas,
San Antonio.

July 31, 1985.

Rehearing Denied Sept. 25, 1985.

Crawford B. Reeder, Asst. City Atty., San Antonio, for appellant.

Harry A. Nass, Jr., San Antonio, for appellees.

Before CADENA, C.J., and BUTTS and REEVES, JJ.

## OPINION

BUTTS, Justice.

This is a municipal labor contract dispute. Defendant City of San Antonio appeals from a judgment awarding plaintiffs Emergency Medical Technicians (EMTs) in the San Antonio Fire Department overtime back pay from November 15, 1974 to July 31, 1977, pursuant to the State Civil Service Act, TEX.REV.CIV.STAT.ANN. art. 1269p, § 6 (1963—1985 Pamp.Supp.).[1] We affirm.

As in the companion case of *Kierstead v. City of San Antonio*, 643 S.W.2d 118, 119 (Tex.1982), these EMTs predicated their suit on the art. 1269p, § 6 normal work week provision for non-firefighters as a term implied by law in each of their contracts. A clear picture of the present case emerges when the historical background is reviewed. San Antonio EMTs filed three separate but identical suits: *Kierstead*, with six EMT plaintiffs, filed November 15, 1978; *Aguilar*, with 63 EMTs, also filed November 15, 1978; and *Acquart*, with 113 EMT plaintiffs, filed December 26, 1978.

However, only *Kierstead* went to trial and continued through the judicial appellate process. Following the Supreme Court opinion, and before trial in the present case, the trial court then granted a motion to consolidate *Aguilar* and *Acquart* and proceeded to hear the causes on stipulated evidence. It is without dispute that the claims of the *Kierstead* EMTs were exactly the same as those in this case. The pleadings are identical; only the names of the EMTs are different. The trial court so found in an unchallenged finding of fact.

The dispositive issue is whether this litigation is effectively foreclosed by the earlier decision in *Kierstead, supra*.

The critical issue in that case was the interpretation and application of art. 1269p, § 6[2] as a mandatorily implied contract term in light of the Fire and Police Employee's Relation Act, art. 5154c–1, § 20 (Vernon 1985)[3] (FPERA), that is, whether there results a waiver of the guarantee of a forty hour work week under art. 1269p, § 6 when a collective bargaining agreement controls as to wages and hours. The trial court and the court of appeals agreed there should be overtime awards for the early contracts, fiscal years 1975 through 1977, but denied any awards for fiscal year 1978 and fiscal year 1979 because of preemption by the collective bargaining agreements of those years.

---

1. This court earlier denied the EMTs' motion to dismiss for want of jurisdiction. *City of San Antonio v. Aguilar*, 670 S.W.2d 681 (Tex.App.—San Antonio 1984, writ dism'd w.o.j.).

2. TEX.REV.CIV.STAT.ANN. art. 1269p, § 6, in pertinent part, provides:

    Provided further, that in any city having more than ten thousand (10,000) inhabitants, according to the last preceding Federal Census, the number of hours in the work week of members of the fire department whose duties do not include fighting fires, including but not limited to mechanics, clerks, investigators, inspectors, fire marshals, fire alarm dispatchers and maintenance men, shall not exceed the number of hours in the normal work week of the majority of the employees of said city other than firemen and policemen.

3. TEX.REV.CIV.STAT.ANN. art. 5154c–1, § 20 provides:

    (a) This Act shall supersede all conflicting provisions in previous statutes concerning this subject matter; to the extent of any conflict the previous conflicting statutory provision is hereby repealed; and this Act shall preempt all contrary local ordinances, executive orders, legislation, rules, or regulations adopted by the state or by any of its political subdivisions or agents, such as, but not limited to, a personnel board, a civil service commission, or a home-rule municipality.

    (b) Provisions of collective bargaining contracts made pursuant to this Act shall take precedence over state or local civil service provisions whenever the collective bargaining contract, by agreement of the parties, specifically so provides. Otherwise, the civil service provisions shall prevail. Civil service provisions, however, shall not be repealed or modified by arbitration or judicial action; although arbitrators and courts, where appropriate, may interpret and/or enforce civil service provisions.

    (c) Nothing contained in this Act shall be construed as repealing any existing benefit provided by statute or ordinance concerning firefighters' or policemen's salaries, pensions, or retirement plans, hours of work, conditions of work, or other emoluments; this Act shall be cumulative and in addition to the benefits provided by said statutes and ordinances.
    Acts 1973, 63rd Leg., p. 151, ch. 81.

*Kierstead* held that any right under art. 1269p, § 6 is waived by that provision of the FPERA, *supra*, when a work week is *specifically* mentioned in a collective bargaining agreement but not when the work week is *ambiguously* set out. In that instance, art. 1269p, § 6 would control for the term November 15, 1974 to July 31, 1977, providing for a "normal work week," where the collective bargaining agreement ambiguously set out what constituted a normal work week for the EMTs.

In ruling that the EMTs were entitled to overtime back pay for training periods also, the Supreme Court stated that art. 1269p, § 6:

> [S]imply distinguishes between fire employees that fight fires and those that do not. Any kind of official work assignment that does not include firefighting and exceeds the regular 40 hour week is compensable as overtime unless there has been a waiver under a collective bargaining agreement. This is the plain meaning of the art. 1269p, § 6 substantive guarantee of maximal weekly hours as it is read within the context of collective bargaining rights....

*Id.* at 121.

The court was careful to point out that where the contracts were ambiguous (FY 1975, FY 1976, FY 1977), the trial court correctly read in art. 1269p, § 6 as a parol integration of an unwaived term of the contracts which triggered an overtime award. Further, the agreement by the EMTs in fiscal year 1978 and fiscal year 1979 to work a fifty-six hour week must reasonably be construed as a waiver of their art. 1269p, § 6 guarantee of a forty hour week. *Id.*

In the case at bar, the judgment in pertinent part states:

\*  \*  \*  \*  \*  \*

2. All Plaintiffs are entitled to recover unpaid overtime pay for all hours worked in excess of 40 hours per week during the period beginning November 15, 1974 for all Plaintiffs in Cause No. 16,680 and beginning December 26, 1974 for all Plaintiffs in original Cause No.

78–CI–18460 and ending for all Plaintiffs, July 31, 1977, at an hourly rate of pay computed on the basis of each Plaintiff's bi-weekly rate of pay divided by eighty (80) then multiplied by 1.5.

\*  \*  \*  \*  \*  \*

4. That all Plaintiffs herein are entitled to recover on the same basis as the Plaintiffs recovered in the companion cause of *Kierstead vs. City of San Antonio*, 643 S.W.2d 118 (Tex.1983).

\*  \*  \*  \*  \*  \*

Additionally, the trial court filed extensive findings of fact and conclusions of law, which in pertinent part provide:

## FINDINGS OF FACT

\*  \*  \*  \*  \*  \*

5. All Plaintiffs herein have written contracts of employment with the City of San Antonio (Defendant), with said contracts being in existence from at least November 15, 1974 through July 31, 1977; and that such contracts consisted of the writings surrounding their employment including the work schedules and pay schedules applicable to their employment plus the terms of whatever collective bargaining contracts were in force during that time.

6. The written contracts of employment of all Plaintiffs herein are identical in every material respect with the Plaintiffs' contracts of employment in *Kierstead vs. City of San Antonio*, 643 S.W.2d 118 (Tex.1983).

7. The number of hours in the normal week of the majority of the employees of the City of San Antonio (Defendant), other than firemen and policemen, is forty (40) hours per week.

\*  \*  \*  \*  \*  \*

10. During all of the time periods each of the Plaintiffs herein were assigned to the Emergency Medical Service, their assigned official duties did not include any duties of fire fighting and

**652**

none of the Plaintiffs engaged in duties of fighting fires.

\*   \*   \*   \*   \*   \*

28. Plaintiffs herein were uncompensated for overtime work for hours worked by them while performing duties as emergency medical technicians while being members of the fire department of the City of San Antonio in excess of forty (40) hours per work week in the amounts indicated for each Plaintiff on Plaintiffs' Exhibit No. 12.

\*   \*   \*   \*   \*   \*

30. The City of San Antonio had full and fair opportunity in *Kierstead vs. City of San Antonio* to litigate all issues of fact and law.

31. The action in *Kierstead vs. City of San Antonio* was a judicial proceeding which resulted in a final judgment.

32. There is an identity of issues in this cause with the issues in *Kierstead vs. City of San Antonio.*

33. There is an identity of parties and their privies in this cause with the parties in *Kierstead vs. City of San Antonio.*

\*   \*   \*   \*   \*   \*

41. The City of San Antonio (Defendant) has an established policy of determining an employee's rate of pay for regular hourly rate of pay and for the hourly overtime rate of pay for all hours worked in excess of forty (40) hours per work week by multiplying the employee's monthly rate of pay for the employee's job classification plus any longevity amounts by twelve (12) and then dividing that sum by twenty-six (26) to determine a bi-weekly rate of pay, and then dividing the bi-weekly rate of pay by eighty (80) to establish the employee's hourly rate of pay, and then to multiply that hourly rate of pay by one and one-half (1½) to determine the employee's overtime rate of pay.

\*   \*   \*   \*   \*   \*

### CONCLUSIONS OF LAW

\*   \*   \*   \*   \*   \*

12. The City of San Antonio is barred from re-litigating the issue of the applicability of Article 1269p V.A.C.S. to the contracts of employment, the hours of work without compensation for overtime, and the method of computation of overtime compensation for emergency medical technicians who are members of the fire department of the City of San Antonio and whose official work duties as emergency medical technicians did not include any duties of fire fighting for the City's fiscal years 1974–75, 1975–76, 1976–77, 1977–78 and 1978–79 *by the doctrine of preclusion.*

13. The City of San Antonio is barred from re-litigating the issues of the applicability of Article 1269p V.A.C.S. to the contracts of employment, the hours of work without compensation for overtime, and the method of computation of overtime compensation for emergency medical technicians who are members of the fire department of the City of San Antonio and whose official work duties as emergency medical technicians did not include any duties of fire fighting for the City's fiscal years 1974–75, 1975–76, 1976–77, 1977–78 and 1978–79 *by the doctrine of res judicata.*

14. The City of San Antonio is barred from re-litigating the issues of the applicability of Article 1269p V.A.C.S. to the contracts of employment, the hours of work without compensation for overtime, and the method of computation of overtime compensation for emergency medical technicians who are members of the fire department of the City of San Antonio and whose official work duties as emergency medical technicians did not include any duties of fire fighting for the City's fiscal years 1974–75, 1975–76, 1976–77, 1977–78 and 1978–79 *by the doctrine of judicial estoppel.*

15. The City of San Antonio is barred from re-litigating the issues of the applicability of Article 1269p V.A.C.S. to the contracts of employment, the hours of work without compensation for overtime, and the method of computation of overtime compensation for emergency medi-

cal technicians who are members of the fire department of the City of San Antonio and whose official work duties as emergency medical technicians did not include any duties of fire fighting for the City's fiscal years 1974–75, 1975–76, 1976–77, 1977–78 and 1978–79 *by the doctrine of collateral estoppel or estoppel by judgment.*

16. *The doctrine of stare decisis* is applicable in all respects to the applicability of Article 1269p V.A.C.S. to the contracts of employment, the hours of work without compensation for overtime, and the method of computation of overtime compensation for emergency medical technicians who are members of the fire department of the City of San Antonio and whose official work duties as emergency medical technicians did not include any duties of fire fighting for the City's fiscal years 1974–75, 1975–76, 1976–77, 1977–78 and 1978–79.

\*   \*   \*   \*   \*   \*

[Emphasis added.]

City attacks the judgment, its findings of fact and conclusions of law in twenty-five points of error, basically contending that two issues in this case were not litigated in *Kierstead, supra:* (1) whether 1269p, § 6 applies to EMTs because of the doctrine of *ejusdem generis,* i.e., the EMTs are more like the firemen than they are like the other job classifications specifically mentioned in the statute, and (2) whether the correct method of overtime computation has been applied.

On the other hand, the EMTs assert this suit is barred from reconsideration by several legal doctrines: (1) preclusion, (2) res judicata, (3) judicial estoppel, (4) collateral estoppel or estoppel by judgment, and (5) stare decisis. These legal theories sometimes "dovetail" to such an extent that it is difficult to distinguish one from the other.

The doctrine of preclusion is the general legal term meaning subsequent litigation is barred. Under it, the more narrow concepts of res judicata, estoppel and stare decisis are subsumed. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, (1985). L. Mendelsohn, *Election of Remedies and Settlement— New Lyrics to an Outworn Tune,* 12 ST. MARY'S L.J. 367, 372–73 (1980). Suffice it to say a finding of only one of these will act to bar a reconsideration of the case.

Findings of fact have the same force and effect as jury answers to special issues and are treated with the same dignity on appellate review. 4 R. McDONALD, TEXAS CIVIL PRACTICE § 16.05 (rev. 1984). If the controlling findings of fact will support a correct legal theory, incorrect legal conclusions will not require a reversal. *City of Corpus Christi v. Davis,* 575 S.W.2d 46, 55 (Tex.Civ.App.—Corpus Christi 1978, no writ). A proper judgment will not be reversed because the trial court made one or more incorrect conclusions of law. *Wirth, Ltd. v. Panhandle Pipe & Steel, Inc.,* 580 S.W.2d 58, 62 (Tex.Civ.App. —Tyler 1979, no writ). A proper judgment will not be reversed merely because it is based on a wrong conclusion of law. *Andrews v. Key,* 77 Tex. 35, 13 S.W. 640, 642 (1890). Rather an appellate court should uphold the judgment on any theory applicable to the case, even though some of the conclusions of law may be erroneous. *Wirth, Ltd., supra,* at 63.

The preclusion doctrine of *stare decisis* is the most applicable to the case at bar. When a rule of law has been decided by the highest court of the state, that decision is generally accepted as binding precedent in the same or lower ranking courts when the same point is presented in a subsequent suit between different parties.[4] Steakley & Howell, *Ruminations*

---

4. In this regard we note this court's ruling in *Kierstead v. City of San Antonio,* 636 S.W.2d 522, 529 (Tex.App.—San Antonio 1983), *rev'd on other grounds,* 643 S.W.2d 118 (Tex.1983):

[S]ince the 1976–77 agreement contains no provisions inconsistent with art. 1269p, § 6, it

must be interpreted ... as incorporating the wages and hours provision of that statute. The Supreme Court plainly agreed with this interpretation.

on Res Judicata, 28 S.W.L.J. 355 (1974); Swilley v. McCain, 374 S.W.2d 871, 875 (Tex.1964); Horne v. Moody, 146 S.W.2d 505, 509 (Tex.Civ.App.—San Antonio 1940, writ dism'd). Stare decisis involves only questions of law and applies only to legal principles in a case, while res judicata is concerned with the judgment and its effect on the same parties in a subsequent proceeding. See Texas Water Rights Commission v. Crow Iron Works, 582 S.W.2d 768, 771 (Tex.1979). Compare Wilhite v. Adams, 640 S.W.2d 875, 876 (Tex.1982) (collateral estoppel involves same issues of fact). Nor need we concern ourselves with whether the parties in this case are the same as those in Kierstead, supra, or in privity with them, as would be required in the doctrines of collateral estoppel or res judicata. Kirby Lumber Co. v. Southern Lumber Co., 145 Tex. 151, 196 S.W.2d 387, 388 (1946) (collateral estoppel requires privity); Id. (privity between parties required in res judicata); Steakley & Howell, supra. Stare decisis is based upon the legal principles rather than the judgment, as in res judicata. Steakley & Howell, supra.

## I. Applicability of 1269p, § 6

■ City argues that art. 1969p, § 6 does not apply if the doctrine of ejusdem generis is applied, i.e., when specific examples are given to illustrate a general classification in a statute, the general words will be construed to be applicable only to entities of the same kind as those enumerated. It contends that the language in the statute "member of the fire department whose duties do not include fighting fires" should be construed to mean persons like those specifically enumerated (mechanics, clerks, investigators, inspectors, fire marshals, fire alarm dispatchers, and maintenance men). City urges that the EMTs are more like firemen than those enumerated because like firemen, EMTs perform emergency work, and are quartered in the fire station; unlike those enumerated, they sleep during duty hours and do not work more or less continuously while on duty. Therefore, City argues that art. 1269p, § 6 does not apply to EMTs.

We disagree. Regarding the applicability of art. 1269p, § 6, the supreme court in Kierstead, supra, expressly stated:

Art. 1269p, § 6 simply distinguishes between fire employees that fight fires and those that do not.

643 S.W.2d at 121.

Further, the court noted that because EMTs were original firefighters, by generic classification, they were treated as firefighters in their early contracts. Id. at 120.

We find the question of ejusdem generis has been decided adversely to City, at least by implication, in Kierstead, supra. See and compare City of San Antonio v. SAISD, 683 S.W.2d 67, 69 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

Moreover, the record clearly reflects that the EMTs have no fire fighting responsibilities. Earl Kierstead testified that as an EMT, he was never assigned any fire fighting duties. James David Miller, Deputy Fire Chief of the City of S.A.F.D. testified that the EMTs had no fire fighting duties, and that being an EMT meant being a paramedic. Compare Privitt v. City of Irving, 666 S.W.2d 541 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) (summary judgment reversed and remanded to determine whether dispatchers' duties include fire fighting). City's ingenious argument to avoid the preclusion doctrine on the applicability of art. 1269p, § 6 therefore fails.

## II. Computation of Overtime Pay

The Kierstead court stated further at 643 S.W.2d 121:

If the trial court found that the EMTs had not waived their Art. 1269p, § 6 hourly guarantees for the contracts in FY 1975 through FY 1977, as it impliedly did, it had a duty to render judgment for the EMTs on all of the work done as uncompensated overtime regardless of the kind of work it was.

We agree further the judgment in Kierstead sets out the correct way to calculate overtime pay:

That the Plaintiffs herein, and each of them, is entitled to recover overtime pay for, all hours worked in excess of 40 hours per week during the period beginning November 15, 1974 and ending July 31, 1977 at an hourly rate of pay computed on the basis of each Plaintiff's bi-weekly rate of pay divided by eighty (80) then multiplied by 1.5.

The judgment in the present case is identical.

City argues that we should emulate the method of overtime calculation done under the Fair Labor Standards Act, 29 U.S.C. 207 (1965 and Supp.1984).[5] We agree.

■ Under that Act the determination of the regular rate is the first step in calculating overtime pay. *See Robertson v. Alaska Juneau Gold Mining Co.,* 157 F.2d 876, 878 (9th Cir.1946), *cert. den.,* 331 U.S. 823, 67 S.Ct. 1314 91 L.Ed. 1839 (1947), *vacated on other grounds,* 331 U.S. 793, 67 S.Ct. 1728 91 L.Ed. 1821 (1947). The regular rate is the hourly rate paid to employees for the normal, non-overtime work week for which they are employed. *See Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 41, 65 S.Ct. 11, 13, 89 L.Ed.2d 29 (1944).

■ Because there is no explicit agreement in the years 1974–1977 governing the work week, according to *Kierstead,* non-fire fighting personnel work a forty hour week; therefore, we divide the weekly wage by forty to determine the hourly rate and multiply the number of hours in excess of forty hours by one and one-half (1½) to determine overtime. This is precisely what was done in the case at bar.

The trial court concluded that City was precluded from relitigating what is, in effect, the same case (only the EMTs having different names). We agree.

Finding that the legal doctrine of stare decisis is controlling in this case, we need not review appellants' other points of error

directed to the inapplicability of the other legal doctrines of preclusion mentioned in the findings of fact and conclusions of law.

Accordingly, the judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

By motion for rehearing the City states it will not pursue the applicability matter further. The City had argued the Supreme Court's statement in *Kierstead* that article 1269p, § 6 applied to EMTs was dicta which was obiter and not judicial. Since the decision of *Privitt v. City of Irving,* 666 S.W.2d 541 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) treats the statement as judicial in nature with the approval of the Supreme Court, the City says, "[i]n that event *Kierstead* is stare decisis as to the applicability question." Therefore, the only issue the City now pursues on appeal is the one of proper computation of overtime pay.

At the instance of the City we now clarify our holding on that point. We held that the proper method of computation was set out in *Kierstead* and that the trial court followed that method in the present case. We affirmed that method. We did not mean to imply or to indicate that the principle of stare decisis applies to the method of computation.

■ Our opinion is modified to the extent necessary for clarification. The only portion of the judgment to which the principle of stare decisis obtains is that of the applicability of the statute. The City now concedes this point.

While we do agree with the City that stare decisis does not control the question of computation of overtime pay, we do affirm the judgment of the trial court as to the method of computation of overtime.

The motion for rehearing is overruled.

---

**5.** Although not applicable here, the U.S. Supreme Court in *Garcia v. San Antonio Metropolitan Transit,* —— U.S. ——, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) recently held that the FLSA is indeed applicable to municipal workers, who had been exempt under the prior overruled decision of *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).