Earl L. **KIERSTEAD, et al**, Appellant,

v.

**CITY OF SAN ANTONIO**, Appellee.

No. 16466.

Court of Appeals of Texas,
San Antonio.

June 23, 1982.

Rehearing Denied July 27, 1982.

Harry A. Nass, Jr., James M. Parker, San Antonio, for appellant.

Crawford B. Reeder, Asst. City Atty., San Antonio, for appellee.

Before CADENA, C. J., and KLINGEMAN and ESQUIVEL, JJ.

## OPINION

CADENA, Chief Justice.

Plaintiffs, Earl L. Kierstead, Douglas Neal Giles, John Huber, James C. Wueste, Hector X. Moreno and Ronnie E. Adams, all of whom worked as Emergency Medical Technicians (EMT's) in the City of San Antonio Fire Department, filed this suit to recover from defendant, City of San Antonio, payment of overtime wages allegedly due them under Article 1269p.[1]

The trial court awarded plaintiffs overtime pay for the period beginning November 15, 1974, and ending July 31, 1977, except that Kierstead, Adams, Giles and Wueste were denied overtime pay for the six months of that period during which they were receiving training. All plaintiffs were denied recovery for overtime worked during the City's fiscal years 1977 and 1978 on the ground that collective bargaining agreements in force during such years superseded Article 1269p.

All plaintiffs appeal from that portion of the judgment denying them recovery for overtime during the two fiscal years (August 1, 1977 to July 31, 1979) when collective bargaining agreements were in force. Kierstead, Adams, Giles and Wueste also complain of that portion of the judgment denying them pay for overtime worked during their training periods. City contends that plaintiffs are entitled to no recovery whatever or, in the alternative, that the trial court erred in not sustaining City's

defense of the two-year statute of limitations.

Until 1973, public officials were precluded from recognizing, or bargaining collectively with unions representing public employees. Article 5154c. In 1973 the Legislature adopted Article 5154c–1, commonly known as the Fire and Police Employee Relations Act (FPERA), the provisions of which were adopted by the voters of San Antonio in 1974. Although the City has been bargaining collectively with its fireman through the firemen's union since 1974, the collective bargaining agreement which became effective August 1, 1977, was the first to contain provisions concerning the normal work week of EMT's. Concededly, prior to August 1, 1977, the question of hours and overtime pay for such employees was governed solely by the provisions of Article 1269p. The parties agree that prior to August 1, 1977, the provisions of Article 1269p determined the rights and liabilities of the parties. Under Article 1269p, plaintiffs, whose duties as EMT's did not include fighting fires, were entitled to receive one and one-half times their normal pay for all hours worked in excess of 40 hours per week.

The problem in this case results from the following language in § 20(b) of FPERA:

> Provisions of collective bargaining contracts made pursuant to this Act shall take precedence over state or local civil service provisions whenever the collective bargaining contract, by agreement of the parties, so provides. Otherwise, the civil service regulations shall prevail. Civil service provisions, however, shall not be repealed or modified by arbitration or judicial action; although arbitrators and courts, where appropriate, may interpret and/or enforce civil service provisions.

The parties agree that the trial court's ruling that the provisions of the collective agreements control over conflicting provisions of Article 1269p must be upheld if Article 1269p is a "civil service provision." Otherwise, the contractual provisions must yield to the statutory mandate.

[1] Unless otherwise indicated, all statutory references are to Tex.Rev.Civ.Stat.Ann. (Vernon).

Pertinent provisions of FPERA may be summarized as follows:

1.  Public policy requires that firemen be provided compensation and other conditions of employment substantially the same as those prevailing in the private sector. Art. 5154c–1 § 2(a).

2.  Since collective bargaining is a fair method of determining wages and other conditions of employment for firemen, firemen shall have the right to organize for collective bargaining purposes. Art. 5154c–1 § 2(b)(1).

3.  Cities are required to provide firemen with compensation and other working conditions similar to those prevailing in the private sector. Art. 5154c–1 § 4.

4.  Because strikes by firemen are prohibited, reasonable alternatives to strikes must be made available. Such alternatives must be expeditious, effective and binding, and FPERA is to be liberally construed to achieve this end. Art. 5154c–1 § 2(b)(3).

5.  Firemen have the right to organize and to bargain collectively "as to wages, hours, working conditions and all other terms and conditions of employment." Art. 5154c–1 § 5(a).

6.  When firemen are represented by a union, the city and the union must bargain collectively. Art. 5154c–1 § 7(a).

7.  Collective bargaining is the performance of the obligation to meet at reasonable times and confer in good faith with respect "to wages, hours and other terms and conditions of employment, or the negotiation of an agreement." If agreement is reached, it shall be reduced to writing at the request of either party. Art. 5154c–1 § 7(b).

8.  FPERA supersedes and repeals all conflicting provisions in previous statutes "concerning this subject matter", and preempts all contrary state or local regulations. Art. 5154c–1 § 20(a).

Article 1269p is a "penal" statute in the sense that it imposes penalties for its violations. It appears as part of Chapter 22 of Title 28 of the civil statutes, which chapter is designated "Civil Service." We do not consider either circumstance decisive in determining whether Article 1269p is a "civil service provision" within the meaning of § 20(b) of FPERA.

■ We believe it is the subject matter of the statute, rather than the means provided for its enforcement or its placement in the codified legislation of a state, that must be given primary consideration in determining whether or not the statute can be characterized as a civil service provision. If the determining factor is the presence or absence of traditional "penal" provisions, we would be forced to conclude that Article 1269m, which all parties concede to be a civil service statute, has not been a civil service statute since § 25a was amended in 1979, making it an offense for any city official to knowingly or intentionally refuse to implement the provisions of Article 1269m or attempt to obstruct its enforcement. Making the presence or absence of "penal" provisions determinative would result in the conclusion that there is a total absence in Texas of "civil service provisions" to which § 20(b) of FPERA is applicable.

The fact that Article 1269p is presently a part of the civil service chapter of Title 28 of the civil statutes is of little, if any, importance. Until 1973, Article 1269p was designated as Article 1583–1 of the Penal Code. When the legislature adopted a completely revised Penal Code in 1973, it expressly recited that several provisions of the former Penal Code dealing with the rights of firemen were not to be considered repealed but were to be transferred to the civil statutes of the State. 1973 Tex.Gen. Laws, ch. 339, § 5, at 995. As a result, Articles 1583–1, 1583a and 1583–2 of the pre-1973 Penal Code were redesignated, respectively, as Articles 1269p, 1269o, and 1269q of the civil statutes and included, along with Article 1269m in Chapter 22, the civil service chapter, of Title 28. While the transfer of such statutes to the civil statutes was legislatively mandated, the new numerical designations and their inclusion in Chapter 22 was not in response to any legislative directive.

Thus, until 1973, Article 1269m was the only statute included in the civil service chapter, of Title 28. Because of the transfers following the adoption of the 1973 Penal Code, Articles 1269o (requiring the establishment of two-platoon fire systems and regulating the number of daytime and nighttime hours which firemen might be required to work), 1269p (establishing maximum hours and requiring payment for overtime), and 1269q (prescribing minimum pay for firemen), became a part of the civil service statute. In addition, the 1973 legislature enacted Article 1269n of the civil service chapter, making it unlawful for any person to coerce a fireman or policeman to participate or to refrain from participating in a political campaign.

Article 1269m, concededly a "civil service provision", establishes a civil service system for firemen and policemen. It embodies the traditional civil service provisions designed to eliminate appointments and promotions based on "political" considerations by establishing a merit system and requiring that appointments and promotions be based on results of competitive examinations and demonstrated fitness rather than on the uncontrolled will of the appointing power. Security of tenure is to be achieved by limiting the power of demotion and removal, providing for notice and hearing, and making available judicial review of discharges and lesser disciplinary actions. The statute contains provisions for "assignment pay" for members of fire departments who are assigned to duty as emergency ambulance attendants. It also provides for the educational incentive pay, military leaves of absence, sick and injury leaves of absence, and vacation pay. Finally, there are provisions, common to many civil service systems, protecting the freedom of political action by firemen and policemen.

Provisions concerning hours of work and compensation are not alien to "civil service provisions" or regulations. In the federal system there are various provisions concerning pay. 15A Am.Jur. *Civil Service* § 48 at 63–4 (1976). The "Civil Service Regulations" promulgated by the United States Civil Service Commission contain provisions governing overtime pay. 5 C.F.R. § 550.-111 (1981). *See also* 5 U.S.C. § 5542 (1980). In applying the various statutes regulating minimum wages for firemen and policemen (formerly Article 1583–2 of the Penal Code, now Article 1269q) Texas courts have looked to Article 1269m to determine whether the claimants were entitled to the protection of the minimum wage statute. *City of San Antonio v. Handley*, 308 S.W.2d 608 (Tex.Civ.App.—San Antonio 1958, writ ref'd).

Article 1269n, although a "penal" statute, implements the provisions of § 22 of Article 1269m, the admittedly "civil service provision", which is designed to free firemen and policemen from political pressure. This goal of freedom from political influence also finds expression in § 16a of Article 1269m. In addition to provisions concerning overtime pay, Article 1269p provides for paid vacations and holidays for firemen and policemen. Section 26a of Article 1269m also provides for vacations for such municipal employees.

In enacting FPERA the legislature had no difficulty in expressing its intention that a provision be limited to Article 1269m. Section 20(d) of FPERA provides that nothing in that statute should be construed as limiting the authority of the fire chief "under Chapter 325, Acts of the 50th Legislature, 1947." Art. 5154c–1 § 20(d). This language refers specifically and solely to Article 1269m. The use of the broader term "civil service provision" in § 20(b) and the deliberate reference to Article 1269m in § 20(d) of FPERA should not be ignored, particularly in view of the fact that two of the "penal" statutes found in the civil service chapter of Title 28 deal with the authority of the fire chief. *See* Art. 1269o § 2 and Art. 1269p § 5. Apparently, the legislature felt that the term "civil service provision" encompassed more than the provisions of Article 1269m.

According to § 7 of FPERA, the duty to bargain collectively requires that the employer and the union confer in good faith with respect to "wages, hours and other

terms and conditions of employment." Art. 5154c–1 § 7. These are the traditional subjects of collective bargaining. The legislature's description of collective bargaining as a "fair and practical method for determining wages and other conditions of employment," clearly contemplated the creation of a negotiating atmosphere in which such critical items as hours and wages were freely negotiable and in which each side would be free to make concessions in one area in order to gain favorable contractual provisions in another. Art. 5154c–1 § 2(b)(1). Such an atmosphere is essential to effective collective bargaining. Without such a "give and take" atmosphere, it is doubtful if the legislative goal of insuring that firemen be provided with compensation and conditions of employment substantially similar to those prevalent in the private sector can be realized. See *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 211, 85 S.Ct. 398, 403, 13 L.Ed.2d 233 (1964).

Plaintiffs, while conceding that the subjects of maximum hours and overtime pay are proper subjects for bargaining, insist that Article 1269p proscribes any collective agreement which provides for conditions less favorable to firemen than those embodied in the statute. Plaintiffs' contention is that they can insist that the City negotiate concerning a work week shorter than that prescribed by Article 1269p, but that the City cannot insist that the union bargain concerning a work week of more than 40 hours.

The limitation of concessions which can be made by one side or the other during collective bargaining inevitably creates obstacles to the "give and take" that is vital to successful bargaining. The refusal to confer and negotiate concerning certain demands is a prolific cause of employer-employee strife. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 42–3, 57 S.Ct. 615, 626–7, 81 L.Ed. 893 (1937). A court should not, by giving a narrow meaning to "civil service provisions," impute to the legislature an intention to impose substantial impediments to collective bargaining by limiting the negotiability of hours and wages.

We conclude that the express legislative purpose in enacting FPERA will best be promoted by holding that Article 1269p is included within the term "civil service provisions" as that term is used in § 20(b) of FPERA. Art. 5154c–1 § 20(b). The trial court properly held that the contractual provisions relating to overtime pay for fiscal years 1977 and 1978 superseded Article 1269p.

■ City contends that the trial court erred in holding that plaintiffs' suit is governed by the four-year statute of limitations rather than the two-year statute. At the time this suit was filed, a suit for a debt was barred in two years if the debt was not evidenced by a contract in writing and in four years if the debt was evidenced by a contract in writing.

A suit for overtime pay allegedly due under a statute is a suit for a "debt." *Uhler v. Todd Houston Shipbuilding Corp.*, 198 S.W.2d 631 (Tex.Civ.App.—Galveston 1946, no writ). There are several cases holding that a suit based on an obligation created by statute is barred in two years. *Cowart v. Russell*, 135 Tex. 562, 144 S.W.2d 249 (1940); *Creps v. Board of Firemen's Relief & Retirement Fund Trustees of Amarillo*, 456 S.W.2d 434 (Tex.Civ.App.—Amarillo 1970, writ ref'd n. r. e.).

■ Plaintiffs, without questioning the holdings in *Uhler*, *Cowart* and *Creps*, contend that the four-year statute is applicable here because their claim is based on written contracts of employment. They argue that Article 1269p must be read into such contracts, so that the provisions of Article 1269p become a part of the written contracts and the City's obligation to pay overtime is, therefore, evidenced by contracts in writing. City does not deny the existence of written contracts of employment, but contends that the claim for overtime pay is created by the statute and rests solely on the statute, independently of the written contracts.

There are many cases, such as *Von Hoffman v. Quincy*, 71 U.S. (4 Wall.) 535, 550, 18 L.Ed. 403 (1867), stating that the law in

existence at the time and place a contract is made, as well as the law of the place where the contract is to be performed, become a part of the contract "as if they were expressly referred to or incorporated in its terms." Corbin maintains that such statements of the rule are couched in such general terms that they cannot be accepted as correct. 3 A. L. Corbin, Contracts § 551 at 197 (1960). Another critic points out that to assume that every contracting party knows the law of the state where the contract is made and of the state where it is to be performed and then to assume that each contracting party adopts the provisions of such laws as part of his contract "is, indeed, to pile a fiction upon a fiction, and certainly without any necessity, for where different conclusions are reached by means of the fiction than would be reached without it, they are not preferable to the opposite ones." 4 S. Williston, Contracts § 615 at 605–6 (3d ed. 1961).

Numerous Texas cases recognize the rule that existing law is incorporated into, and forms a part of, a contract. 13 Tex.Jur.2d Contracts § 165 n.2. The Texas case most nearly on point is *Kiel v. City of Houston*, 558 S.W.2d 69 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n. r. e.), which involved a claim by Kiel, a city fireman, for back pay. The claim was based on the fact that although Kiel had been promoted on October 6, 1969, "by operation of law" under the provisions of Article 1269m § 8, the city failed to pay him the additional salary to which such promotion entitled him. The city contended that Kiel's recovery should be limited to the extra compensation to which he was entitled for the two years preceding the filing of the suit. The city's plea of the two-year statute of limitation was rejected and the four-year statute was applied on the theory that Kiel's suit was for a debt evidenced by a written contract.

The Houston Court concluded that Kiel's civil service record and the "writings which surround it, especially the eligibility list for promotion to Investigator, taken as a whole," constituted a written contract of employment. The court found no problem in the fact that "the critical term, the agreement to promote Kiel to Investigator," was found in the statute and not in the contract. The court, relying on the rule that relevant statutes are incorporated by implication into contracts made by governmental entities, said that it was sufficient "for the purpose of the statute of limitation that the writing acknowledges a state of facts from which, by fair implication, an obligation or liability arises," and that "the contract need not contain an express promise to do the thing in issue." 558 S.W.2d at 71.

City challenges the correctness of the *Kiel* holding, pointing to cases from other jurisdictions which hold that if the duty which the employee seeks to enforce is created solely by the terms of the statute and cannot exist without it, the duty is purely statutory in nature, although the relationship of employer-employee is created by a written contract. *See Williams v. CLE Corp.*, 556 F.2d 346 (5th Cir. 1977); *Ingram v. Steven Robert Corp.*, 547 F.2d 1260 (5th Cir. 1977); *City of Phoenix v. Drinkwater*, 46 Ariz. 470, 52 P.2d 1175 (1935).

The reasoning adopted in *Williams, Ingram,* and *Drinkwater* is persuasive, but we are not free to adopt the view that the obligation on which plaintiffs rely in this case arose independently of the written contract. We believe that we are precluded from adopting the City's theory by the decision in *Empire Gas & Fuel Co. v. State*, 121 Tex. 138, 47 S.W.2d 265 (1932).

In *Empire*, the State sued to recover royalty payments due from a lessee under an oil and gas lease. The suit was filed in Travis County and the lessee asserted its privilege to be sued in its domiciliary county. The Supreme Court, relying on a statute which provided that all money due the State should be payable in Austin, stated that the lease and statute must be construed together. Consequently, the Court considered the lease instrument "to be a contract to perform an obligation in Travis County" and concluded that Empire was properly suable in Travis County. 47 S.W.2d at 266–7.

The Supreme Court in *Empire* clearly considered the statute to be a part of the written lease and viewed the statutory provision requiring performance in Austin as an obligation created by the written contract. This conclusion is inescapable, since Article 1995 § 5, the venue provision on which the Court relied, provided that a person who has "contracted in writing to perform an obligation in a particular county" could be sued in such county. *See Texas Pacific Coal & Oil Co. v. Stuard*, 7 S.W.2d 878, 880 (Tex.Civ.App.—Eastland 1928, writ ref'd).

The trial correctly applied the four-year statute.

■ City contends that plaintiffs are not entitled to recover overtime pay for the fiscal year 1976–1977 because the collective bargaining agreement for such period recites that the City was in compliance with FPERA during that period. After negotiations concerning the 1976–77 agreement reached an impasse and City refused to submit to arbitration, the Union filed suit. *See* Art. 5154c–1 § 16. This suit never reached trial because the parties reached an agreement which rendered the suit moot. The agreement provides that the Union "will drop and discontinue all litigation which is in any way associated with the contract impasse and [will] consider this agreement as full compliance with the state collective bargaining law for the time period of Fiscal Year 1976–1977."

The purpose of the suit authorized by § 16 of FPERA is to compel a city to comply with § 4 of that statute. Section 4 requires that cities provide firemen "with compensation and other conditions of employment that are substantially the same [as those] which prevail in comparable private sector employment; . . ." The contractual provision on which City relies is not substantially different from the language of § 8 of FPERA which provides that on execution of a collective bargaining agreement the city "shall be deemed to be in compliance with the requirements of § 4 hereof as to such terms and conditions of employment for the duration of [such]

agreement." We conclude that neither the contractual provision nor the language of § 8 encompasses more than compliance by the City with the obligations imposed it by FPERA. If the contractual provision is broader than the § 8 provision, it does no more than admit City's compliance with all of the provisions of FPERA. That is, the broadest possible interpretation of the contractual provision, while including a statement of compliance with all provisions of the "state collective bargaining law," as opposed only to a compliance with § 4 of FPERA, cannot be said to include the provisions of statutes other than FPERA.

In any event, since the 1976–77 agreement contains no provisions inconsistent with Article 1269p, it must be interpreted, under the Texas cases considered in our discussion of the problem of limitations, as incorporating the wages and hours provisions of that statute. *See Byrd v. City of Dallas*, 118 Tex. 28, 6 S.W.2d 738 (1928).

The trial court did not err in allowing plaintiffs recovery for overtime worked by them during the 1976–77 fiscal year.

■ Kierstead, Giles, West and Adams contend that the trial court erred in denying them recovery for overtime worked by them during the period when they were undergoing training. We agree with City that the evidence does not reveal these plaintiffs worked during their training periods and, therefore, there is no basis for an award of overtime pay for such periods.

■ The trial court assessed ½₂ of the court costs against each plaintiff and the remaining ½ of such costs against City. Plaintiffs' complaint concerning such apportionment of the costs is without merit. Where plaintiffs are awarded only a partial recovery the trial court may apportion the costs. *Texaco, Inc. v. Parker*, 373 S.W.2d 870 (Tex.Civ.App.—El Paso 1963, writ ref'd n. r. e.).

■ Rule 131, Tex.R.Civ.P., provides that the successful party to a suit shall recover all costs incurred in the case. Plaintiffs contend that the trial court's apportionment

of costs in this case cannot stand because Rule 141, Tex.R.Civ.P. requires that a trial court may adjudge the costs "otherwise than as provided by law or these rules" for "good cause, to be stated in the record." Since the trial court stated no reason in support of its ruling concerning costs, plaintiffs insist that costs must be.assessed as provided in Rule 131. We disagree.

Plaintiffs were only partially successful in their suit. They are not "successful" parties within the meaning of Rule 131. It cannot be said that a "partially successful" party is a "successful party" within the meaning of Rule 131 because such a holding would require that we consider City, which was partially successful, also a "successful party." Since Rule 131 is inapplicable, the court did not award costs "otherwise than as provided by law or these rules" and Rule 141 is not applicable.

The record furnishes no basis for concluding that the trial court abused its discretion in assessing costs in this case.

The judgment of the trial court is affirmed. Costs are apportioned as follows: each appellant shall pay $\frac{1}{12}$ of the costs and appellee shall pay $\frac{1}{2}$ of the costs.