Earl L. KIERSTEAD, et al., Petitioners,

v.

CITY OF SAN ANTONIO, Respondent.

No. C–1563.

Supreme Court of Texas.

Nov. 24, 1982.

Rehearing Denied Jan. 12, 1983.

---

Harry A. Nass, Jr., James M. Parker, San Antonio, for petitioners.

Jane H. Macon, City Atty., Crawford B. Reeder, First Asst. City Atty., San Antonio, for respondent.

PER CURIAM.

This is a municipal labor contract case involving a claim by six San Antonio emergency medical technicians ("EMT's")[1] against the City of San Antonio ("City") for overtime back pay. The EMTs were originally firefighters who had been trained and assigned to work as EMTs in the emergency medical service of the City's fire department. Though they were employed in a specifically non-firefighting capacity as EMTs, they were obligated to work the 56 hour work week of firefighting personnel under the employment contracts covering the fiscal years ("FY") of 1975, 1976, 1977, 1978 and 1979. This hourly assignment contradicted the civil service specifications of Tex.Rev.Civ.Stat.Ann. art. 1269p, § 6[2] that non-firefighting fire personnel only work a "normal" City employee work week of 40 hours. The EMTs' claim in the instant action was for the difference between the 56 hour week and the 40 hour week as uncompensated time and a half overtime due on a written contract for all the weeks they were assigned to train or work as EMTs under the FY 1975 through FY 1979 contracts. They predicated their suit on the Art. 1269p, § 6 normal work week provision for non-firefighters as a term implied by law in each of their contracts.

The fire personnel contracts for FY 1976 through FY 1979 were negotiated by the fire employees' union under the collective bargaining provisions of the Fire and Police Employee Relations Act ("FPERA"), Tex. Rev.Civ.Stat.Ann. art. 5154c–1. Acts 1973,

1. Earl L. Kierstead, Douglas Neal Giles, John Huber, James C. Wueste, Hector X. Moreno and Ronnie E. Adams.

2. Sec. 6:
   ... It shall be unlawful for any city having more than one hundred twenty-five thousand (125,000) inhabitants, according to the last preceding Federal Census, to require or permit any fireman to work more than an average, during a calendar year, of sixty (60) hours per week.
   Provided further, that in any city having more than ten thousand (10,000) inhabitants, according to the last preceding Federal Census, the number of hours in the work week of members of the fire department whose duties do not include fighting fires, including but not limited to mechanics, clerks, investigators, inspectors, fire marshals, fire alarm dispatchers and maintenance men, shall not exceed the number of hours in the normal work week of the majority of the employees of said city other than firemen and policemen.
   Art. 1269p was formerly designated as Art. 1583–1 of the Pre-1973 Texas Penal Code. See Acts 1945, 49th Leg., p. 56, ch. 38. With the update of the Penal Code in 1973, Art. 1583–1 was transferred intact into the civil statutes. Acts. 1973, 63 Leg. p. 995, ch. 339, § 5.

63 Leg.P. 151, ch. 81. None of the contracts, including the FY 1975 agreement, explicitly mentioned Art. 1269p, § 6 as an applicable determinant of work hours. Only the contracts of FY 1978 and FY 1979 specifically stated that "EMTs" as such were to work a 56 hour week. The FY 1975 through FY 1977 agreements spoke simply of firefighters, and because the EMTs were originally firefighters by generic job classification they were treated as firefighters under these earlier contracts and held obligated to work 56 hour weeks.

The critical issue in this case is the interpretation and application of Art. 1269p, § 6 as a mandatorily implied contract term in light of the FPERA allowance that fire personnel are free to bargain collectively as to hours regardless of Art. 1269p, § 6 because FPERA supercedes "... all conflicting provisions in previous statutes governing this subject matter ...." Art. 5154c–1, § 20.[3] The EMTs argue that Art. 1269p, § 6 is a non-negotiable, implied term of all their contracts as a matter of the public policy of the State of Texas to read all existing statutes at the time a contract is formed as terms of the contract. The practical effect of this line of reasoning is to sanction the bringing of all claims for overtime as on-the-contract remedies cognizable under the four year statute of limitations, Tex.Rev.Civ.Stat.Ann., art. 5527. The City responded to the EMT's position by urging that § 20 of FPERA made the guarantee of a 40 hour week under Art. 1269p, § 6 waivable during collective bargaining. It also argued that where Art. 1269p, § 6 was not an explicit term of an employment contract, as it alleges here, any remedy sought for overtime under Art. 1269p, § 6 must arise in tort and be governed by the two year Statute of Limitations, Tex.Rev.Civ.Stat. Ann., art. 5526.

Both parties presented their interpretations of the application of Art. 1269p, § 6 vis-a-vis the override provision of FPERA, § 20 during the bench trial of the EMTs' claim in November, 1979. The trial court awarded the EMTs overtime on the early contracts but denied awards for the FY 1978 and FY 1979 agreements that had specifically mentioned a 56 hour work week obligation for EMTs. The trial court also denied Plaintiffs Kierstead, Adams, Giles and Wueste overtime for those periods of employment involving EMT training even though the EMTs proved without any objection by the City, that all training was conducted on the job during 56 hour work weeks without overtime compensation. Each side appealed the judgment urging again in particular their respective positions on the interrelationship of Art. 1269p, § 6 and FPERA, § 20. The court of appeals affirmed the judgment of the trial court. 636 S.W.2d 522. The City and the EMTs each filed an application for writ of error with this Court.

■ The City contends that the court of appeals erred in affirming the trial court's judgment that the four year statute of limitations for contract actions applied to the

---

**3.** *Sec. 20 states that:*

(a) This Act shall supersede all conflicting provisions in previous statutes concerning this subject matter; to the extent of any conflict the previous conflicting statutory provision is hereby repealed; and this Act shall preempt all contrary local ordinances, executive orders, legislation, rules, or regulations adopted by the state or by any of its political subdivisions or agents, such as, but not limited to, a personnel board, a civil service commission, or a home-rule municipality.

(b) Provisions of collective bargaining contracts made pursuant to this Act shall take precedence over state or local civil service provisions whenever the collective bargaining contract, by agreement of the parties, specifically so provides. Otherwise, the civil service provisions shall prevail. Civil service provisions, however, shall not be repealed or modified by arbitration or judicial action; although arbitrators and courts, where appropriate, may interpret and/or enforce civil service provisions.

(c) Nothing contained in this Act shall be construed as repealing any existing benefit provided by statute or ordinance concerning firefighters' or policemen's salaries, pensions, or retirement plans, hours of work, conditions of work, or other emoluments; this Act shall be cumulative and in addition to the benefits provided by said statutes and ordinances.

Acts 1973, 63th Leg., p. 151, ch. 81.

EMTs' claim for back pay under Art. 1269p, § 6. The gravamen of its complaint is, as it was below, that such suits lie in tort rather than contract. This position is contrary to Texas law. It has been the long held opinion of this Court that "[t]he laws, at least as to substantial rights and remedies, existing at the time a contract is made become a part of the contract." *Langever v. Miller,* 124 Tex. 80, 76 S.W.2d 1025, 1026–1027 (Tex.1934). We agree with the court of appeals' disposition of this question, 636 S.W.2d 522, 529, and refuse the City's application for want of reversible error.

The EMTs' application restates the same three points they presented to the court of appeals. See 636 S.W.2d 522. We have denied review of their first and third points of error because we find no reversible error in the opinion of the court of appeals on these points. We have, however, granted the EMTs' application on their second point of error which claims that the court of appeals was mistaken in affirming the trial court's denial of overtime to Kierstead, Adams, Wueste and Giles for their on-the-job training periods during 56 hour work weeks under the pre-FY 1978 contracts.

█ The only inferable reason for denying overtime back pay for these periods would be a reading of Art. 1269p, § 6 that somehow excluded on-the-job training from the ambit of compensable work. We do not believe that the statute is susceptible to such an unduly restrictive reading. Art. 1269p, § 6 simply distinguishes between fire employees that fight fires and those that do not. Any kind of official work assignment that does not include firefighting and exceeds the regular 40 hour week is compensable as overtime unless the Art. 1269p, § 6 right to a maximal 40 hour week has been waived under a FPERA, § 20 collective bargaining agreement. This is the plain meaning of the Art. 1269p, § 6 substantive guarantee of maximal weekly hours as it is read within the context of collective bargaining rights given to police and fire employees under § 20 of FPERA; where, as here, the relationship of the statutes has such a plain meaning it must be

given direct effect by the courts. *Empire Gas & Fuel Co. v. State,* 121 Tex. 138, 47 S.W.2d 265, 271 (Tex.1932).

█ We may infer from the trial court's judgment here that it interpreted the EMTs' hourly obligations on the contracts in terms of the manifest intent of the parties to specifically bind the EMTs to a 56 hour work week. Thus where the contracts were ambiguous as to the EMTs' hours, i.e., in FY 1975, FY 1976 and FY 1977, the trial court correctly read in Art. 1269p, § 6 as a parol integration of an unwaived term of the contracts which triggered an overtime award. See, for discussion, 4 Williston on Contracts, 3rd ed., § 636 (1961). In contrast, the FY 1978 and FY 1979 contracts did not occasion overtime awards because they contained unambiguous agreements by the EMTs through their union to work 56 hours a week. The EMTs' agreement to work a 56 hour week in each of these contracts must reasonably be construed as a waiver of their Art. 1269p, § 6 guarantee of a 40 hour week. Once the EMTs had waived their Art. 1269p, § 6 rights on the contract, they were estopped from seeking any kind of overtime remedy under the statute for the periods in question.

If the trial court found that the EMTs had not waived their Art. 1269p, § 6 hourly guarantees for the contracts in FY 1975 through FY 1977, as it impliedly did, it had a duty to render judgment for the EMTs on all of the work done as uncompensated overtime regardless of the kind of work it was. Tex.R.Civ.Pro. 301. The City itself gave the critical trial testimony that the EMTs worked full-time 56 hour weeks as of the date of their assignment to the emergency medical service; that such work included training periods; and that they received no overtime pay. On this record alone, the EMTs made out a prima facie case for overtime compensation for all work periods, including training time, and should have received a judgment accurately reflecting all such overtime due them.

We conclude that the judgments of the trial court and court of appeals must be reversed as to their denial of overtime com-

pensation to Kierstead, Wueste, Adams and Giles for on-the-job training periods and the cause remanded to the trial court for the determination and award to these four EMTs of training period overtime wages with interest in accordance with this opinion. See, e.g., *Womack Machine Supply Co. v. Fannin Bank,* 504 S.W.2d 827 (Tex.1974). The EMTs' application for writ of error has been granted and summarily disposed of without oral argument pursuant to Tex.R. Civ.Pro. 483. The costs of this appeal are to be paid by the City.