**CITY OF DALLAS, Texas, Appellant,**

v.

**Freddie SPAINHOUER, Appellee.**

**No. 05–87–00435–CV.**

Court of Appeals of Texas, Dallas.

Aug. 24, 1988.

Rehearing Denied Oct. 19, 1988.

John E. Kirby, Dallas, for appellant.

Stephen L. Holley, Dallas, for appellee.

HECHT, Justice.

At issue in this case is whether the City of Dallas must pay Freddie Spainhouer, a photographer for the Dallas Fire Department, for time when he was not on the job but was subject to call. Resolution of this issue depends upon the proper construction of the pre–1987 language of Texas Revised Civil Statutes article 1269p, section 6, which regulates the number of hours fire department employees can work in certain cities. We hold that Spainhouer is not entitled to be paid for such time. Consequently, we reverse the summary judgment granted Spainhouer and render judgment that Spainhouer take nothing against the City.

I

As a photographer for the Dallas Fire Department, Spainhouer was, for the better part of six years, required to be on call when he was not actually on the job, sick or on vacation.[1] While on call, he was not required to remain at or near a fire station but was free to go about his personal affairs as long as he remained within reach by telephone, radio or pager. The City paid Spainhouer for all the time he was actually on the job, his regular time at regular rates and his overtime at time-and-a-half rates. The City did not pay Spainhouer for any time he was not actually on the job, even though he was on call almost all of that time.

Spainhouer sued the City for overtime pay for all his on-call, off-the-job time. Both parties moved for summary judgment on the issue of the City's liability. The

1. The parties stipulated that Spainhouer was on call every week from July 30, 1980, to June 23, 1984, and every other week from June 24, 1984, to February 10, 1986.

trial court granted Spainhouer's motion and denied the City's, holding that Spainhouer was entitled "to recover pay at time and one-half for 'any and all hours during which [he is] required to remain available for immediate call to duty' to the extent such hours exceed the 'normal work week' applicable to him". The only issue remaining for trial was "how many hours [Spainhouer] has been unpaid".

The question of what amount was due Spainhouer was then tried on stipulated facts before the court without a jury. Spainhouer submitted the following formula for calculating the amount due him for each week involved:

Total number of hours in a week ( = 168)

*minus* Vacation & sick time

*minus* Regular on-the-job hours paid (usu. 40)

*minus* Overtime on-the-job hours paid

*Equals* On-call off-the-job hours due overtime pay

Thus, in a typical week in which Spainhouer took no vacation or sick time and worked his normal 40 hours with no overtime hours actually on the job, Spainhouer claimed to be due time-and-a-half pay for 128 on-call off-the-job hours, that is, for every other hour in the week. Based upon his work history, to which both parties agreed, Spainhouer computed he was due $477,841.60. The City did not dispute Spainhouer's arithmetic.[2] The trial court rendered judgment for this amount, plus $109,034.88 prejudgment interest, for a total judgment of $586,876.48.

## II

### A

Spainhouer's claim rests solely upon former article 1269p, section 6, Texas Revised Civil Statutes Annotated.[3] We hold that this statute, properly construed, does not entitle Spainhouer to be paid for hours not actually worked on the job.

Two versions of the statute apply to the time period covered by Spainhouer's claim, one prior to June 14, 1985 ("the pre–1985 version"), and the other effective on and after that date ("the 1985 version"). To set out the text of both without unnecessary repetition, we adopt the format used by the Legislature, in which the language unique to the pre–1985 version is bracketed and struck over, the language added by the 1985 version is italicized, and the language common to both is in ordinary roman type:

(a) It shall be unlawful for any city having more than ten thousand (10,000) inhabitants but not more than sixty thousand (60,000) inhabitants, according to the last preceding Federal Census, to require or permit any *fire fighter* [~~fireman~~] to work more than seventy-two (72) hours during any one calendar week. It shall be unlawful for any city having more than sixty thousand (60,000) inhabitants but not more than one hundred twenty-five thousand (125,000) inhabitants, according to the last preceding Federal Census, to require or permit any *fire fighter* [~~fireman~~] to work more than an average, during a calendar year, of sixty-three (63) hours per week. It shall be unlawful for any city having more

---

**2.** However, despite the trial court's ruling, the City continued to argue that Spainhouer was not entitled to be paid for all his off-the-job hours. Besides reasserting its legal position which the trial court had already rejected, the City argued that at most Spainhouer was entitled to have his on-call, off-the-job hours counted in his normal work week, and to be paid overtime only on any additional on-the-job hours. Under the City's theory, for each week Spainhouer claimed additional pay, his normal hours, usually 40, were recalculated to include regular, on-the-job time and on-call, off-the-job time. The City then calculated overtime pay on any additional time on the job, whether regular or overtime. In a typical week, Spainhouer was on the job eight regular hours each day Monday through Friday,

and was on call but off the job every other hour in the week. Under the City's theory, Spainhouer's normal 40–hour work week would consist of the 24 hours in Monday and 16 hours in Tuesday, including his 8 regular hours that day, and the City would then owe overtime pay for the 24 regular hours he was on the job Wednesday through Friday, but not for his on-call time. Using this theory the City calculated that it owed Spainhouer only $46,768.60. The trial court rejected this theory.

**3.** The statute has now been recodified as TEX. LOCAL GOV'T CODE ANN. § 142.001 (Vernon Pamph.1987).

than one hundred twenty-five thousand (125,000) inhabitants, according to the last preceding Federal Census, to require or permit any *fire fighter* [~~fireman~~] to work more than an average, during a calendar year, of sixty (60) hours per week.

*(b)* Provided further, that in any city having more than ten thousand (10,000) inhabitants, according to the last preceding Federal Census, the number of hours in the work *cycle* [~~week~~] of members of the fire department whose duties do not include fighting fires, including but not limited to mechanics, clerks, investigators, inspectors, fire marshals, fire alarm dispatchers and maintenance men, shall not, *except in an emergency, average more hours in a week than* [~~exceed~~] the number of hours in the normal work week of the majority of the employees of said city other than *fire fighters and police officers. The number of days on duty in a work week or the average number of days on duty per week in a work cycle of an employee subject to this subsection may not exceed the number of days on duty during the work week of the majority of the employees of the city other than fire fighters and police officers. In this section, "work cycle" means that period of time in a posted work schedule starting at the time the cycle begins and ending at the time the cycle begins to repeat itself. The cycle may span any number of weeks or days or a portion of a week or day* [~~firemen and policemen~~].

*(c)* Provided further, that in computing the hours in the work week *or the average number of hours in a work week in a work cycle of a fire fighter or other member of the fire department* [~~of fire-men~~] subject to the provisions of *this section* [~~the preceding paragraph~~], there shall be included and counted any and all hours during which such *fire fighter or other member of the fire department is*

[~~firemen are~~] required to remain available for immediate call to duty by continuously remaining in contact with a fire department office by telephone or radio.

*(d) A fire fighter or other member of the fire department who is required in an emergency to work more hours in a work week or work cycle than authorized by Subsection (a) or (b) of this section is entitled to be paid overtime for the excess hours worked in accordance with Subsection (e) of this section without regard to the number of hours worked in any one week of the work cycle.*

*(e) A fire fighter or other member of the fire department* [~~Provided, however, that in any such city having more than ten thousand (10,000) inhabitants, in the event of an emergency, firemen~~] may be required to work more than the maximum hours herein provided; and in such event *the fire fighter or other member of the fire department* [~~firemen~~] working more than the maximum hours herein provided shall be compensated for such overtime at a rate equal to one and one-half times the compensation paid to *the fire fighter or other member of the fire department* [~~such firemen~~] for regular hours.[4]

To summarize, the first paragraph of the pre–1985 version and paragraph (a) of the 1985 version make it unlawful for certain cities to require or permit fire fighters to work more than a certain number of hours per week on the average. The second paragraph of the pre–1985 version and paragraph (b) of the 1985 version mandate that non-firefighting members of the fire departments of certain cities shall not have longer work weeks than most other city employees. Paragraph (b) of the 1985 version excepts emergency situations from this mandate.

This case focuses on the last two paragraphs of the pre–1985 version of the statute, and correspondingly, the last three

---

**4.** The 1985 version is Act of June 14, 1985, ch. 725, § 1, 1985 Tex.Gen.Laws 2522–2523. The pre–1985 version is Act of June 1, 1959, ch. 356, § 1, 1959 Tex.Gen.Laws 781–782. Prior to the 1973 revisions in the Texas Penal Code, this statute was designated article 1583–1, section 6 of the Texas Penal Code until that code was revised in 1973 and the statute was redesignated article 1269p, section 6, Texas Revised Civil Statutes.

paragraphs of the 1985 version. The third paragraph of the pre–1985 version and paragraph (c) of the 1985 version provide that the work week of at least certain members of the fire department[5] includes the hours during which they are "required to remain available for immediate call to duty by continuously remaining in contact with a fire department by telephone or radio." The fourth paragraph of the pre–1985 version provides that firemen may be required to work more than the maximum hours in an emergency, and if they do, shall be paid time-and-a-half overtime.[6] Paragraphs (d) and (e) of the 1985 version appear to contain essentially the same provision.[7]

■ Spainhouer argues that the third paragraph of the pre–1985 version of the statute and paragraph (c) of the 1985 version entitle him to overtime pay for all hours he was subject to call by radio, telephone or pager, even though he was free to go about his personal business and in fact did so. However, Spainhouer's argument ignores the last paragraph of the pre–1985 version and the last two paragraphs of the 1985 version. Those provisions require overtime pay only for hours actually *worked* in excess of the maximum set by the statute. The statute nowhere requires cities to pay members of the fire department for hours not spent on the job.

■ This distinction between hours actually worked and hours free for personal use subject to call was drawn more clearly by the Legislature in its 1987 amendments to section 6(c) ("the 1987 version"). Again, we adopt the format used by the Legislature for showing the changes from the 1985 version to the 1987 version:

(c) Provided further, that in computing the hours in the work week or the average number of hours in a work week in a work cycle of a fire fighter or other member of the fire department subject to the provisions of this section *and Section 207(k) of Title 29, United States Code,* there shall be included and counted any and all hours during which such fire fighter or other member of the fire department is required to remain *on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes. The time a person is required to leave a telephone number where he or she may be reached, or is required to remain accessible by radio or pager is not con-*

---

5. The City argues in its first and second points of error that the third paragraph of the pre–1985 version of article 1269p, section 6, does not apply to non-firefighting members of a fire department, like Spainhouer. A literal reading of the statute refutes the City's argument. The third paragraph applies expressly to "firemen subject to the provisions of the preceding paragraph". The preceding paragraph applies to "members of the fire department whose duties do not include fighting fires, including but not limited to mechanics, clerks, investigators, inspectors, fire marshals, fire alarm dispatchers and maintenance men". However, the City argues that, for various reasons, the third paragraph should not be read literally and instead, should be construed to apply only to "firemen", like the fourth paragraph of the pre–1985 version. The City concedes that the last three paragraphs of the 1985 version apply to "a fire fighter or other member of the fire department", which would include Spainhouer. We do not address the City's argument but rather, assume without deciding that the last two paragraphs of the pre–1985 version, like the last three paragraphs of the 1985 version, apply to all fire department employees, including Spainhouer.

6. The City argues in its fifth and sixth points of error that the statute requires overtime pay only for time spent in emergencies. We find no such limitation in the statute, nor do we understand why compensation should be due only emergency overtime as opposed to all overtime. Consequently, we overrule the City's fifth and sixth points of error.

7. Paragraph (e) of the 1985 version omits the limitation in the last paragraph of the pre–1985 version that only "in the event of an emergency" can fire fighters or other members of the fire department be required to work more than the maximum hours prescribed. The Legislature may have intended that this limitation remain through its inclusion in new paragraph (d), inasmuch as its omission would seem to place paragraphs (a) and (b) in direct conflict with paragraph (e). The latter would allow all that the former forbid: requiring members of the fire department to work more than a maximum number of hours. We are not required in this case to resolve this apparent conflict.

sidered as hours worked [~~available for~~ ~~immediate call to duty by continuously~~ ~~remaining in contact with a fire de-~~ ~~partment office by telephone or by ra-~~ ~~dio~~]. *In computing the hours in the work week or the average number of hours in a work week in a work cycle of fire fighter or emergency service personnel vacation, sick time, holidays, time in lieu of holidays or compensatory time may be excluded as hours worked.*[8]

This amendment makes clear that by the pre–1987 language, "available for immediate call to duty by continuously remaining in contact with a fire department office by telephone or by radio", the Legislature meant "on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes." The amendment demonstrates that the Legislature never intended to require cities to pay members of the fire department overtime for hours during which they were merely "accessible".

Spainhouer claims that article 1269p, section 6 entitles him to be paid for every hour of every day, sleeping and waking, at home and at work, on the job and off, for the better part of six years. No statute should be construed to yield so foolish and absurd a result. *See McKinney v. Blankenship*, 154 Tex. 632, 282 S.W.2d 691, 698 (1955). The language of article 1269p, section 6 requires payment only for hours worked, as anyone would certainly expect. It would be a foolish statute indeed that obliged taxpayers to pay a fire department photographer nearly half a million dollars in overtime pay for 24 hours a day, every day for nearly six years, simply because the photographer *might* have been called to work. We do not read article 1269p, section 6 to impose this requirement upon the City of Dallas.

B

Spainhouer cites five decisions, two by the supreme court and three by the Corpus Christi court of appeals, in support of his contention that article 1269p, section 6 entitles him to overtime pay for on-call, off-the-job hours. We consider four of these cases, the two supreme court decisions and two of the court of appeals decisions, to contravene Spainhouer's contention. The fifth case we find unpersuasive.

In *McGuire v. City of Dallas*, 141 Tex. 170, 170 S.W.2d 722 (Tex.Comm'n App. 1943, opinion adopted), fire fighter McGuire sued the City of Dallas for overtime pay due under article 1583 of the Texas Penal Code, a predecessor to article 1269p. At that time article 1583 made it unlawful for some cities to require or permit a fire fighter to work more than 12 hours per day, or 72 hours per week, or 144 hours per two consecutive weeks, except in emergencies. The statute mandated pay for any overtime at the rate of time-and-a-half. Two weeks each month McGuire worked a night shift consisting of 14 hours per day and 98 hours per week. McGuire was also required to make inspections for four hours every other month. McGuire sought overtime pay for a total of 1,360 hours over a 27–month period of employment. The city argued that McGuire could not recover for overtime work because he had performed it in violation of article 1583. The court rejected the city's argument, holding that the city, not McGuire, had violated the statute. The court stated:

> A careful consideration of [article 1583] leads to the conclusion that overtime work by a fireman is not in itself prohibited. The prohibition is to the "requirement or permitting" of overtime work. *A fireman who performs overtime work* either in an emergency or otherwise under requirement or permis-

**8.** Act of Aug. 31, 1987, ch. 933, § 1, 1987 Tex. Gen.Laws 6272, 6273–6274; Act of Aug. 4, 1987, ch. 63, § 1, 1987 Tex.Gen.Laws 411–412 (Second Called Session). The same Legislature repealed article 1269p and recodified it as section 142.-001 of the Texas Local Government Code. Act of September 1, 1987, ch. 149, §§ 1, 49, 1987 Tex.Gen.Laws 1397, 1721, 2545. Section 142.-001 does not contain any of the language added to article 1269p, section 6 by the 1987 amendment. However, section 311.031(c) of the Texas Government Code Annotated provides that if a statute is both amended and, as part of a recodification, repealed by the same Legislature, the amendment survives, even if not contained in the recodification.

sion by a municipality *is entitled to additional compensation* at the rate of time and one-half overtime.... To hold otherwise would nullify the language quoted whereby additional compensation is allowed to firemen who are required or permitted to work more than the hours and days provided by the statute. The language shows beyond question that overtime work as such is not made illegal.... It is clear therefore that the legislature by the grant of additional compensation to those who were required or permitted to work overtime hours did not intend to render the prohibited overtime work void, but rather to prevent it.

*Id.*, 170 S.W.2d at 725 (emphasis added). The supreme court concluded that the city owed McGuire $1,058.04 additional compensation for time actually spent on the job.

In *Kierstead v. City of San Antonio*, 643 S.W.2d 118 (Tex.1982), six emergency medical technicians ("EMT's") required to work 56–hour weeks claimed overtime pay for all hours worked over 40 per week. The EMT's based their claim upon the pre–1985 version of article 1269p, section 6, which prescribed a 60–hour maximum work week for fire fighters in certain cities but provided that the work week of members of the fire department whose duties did not include fighting fires, like EMT's, could not be longer than the normal work week of other city employees. However, the EMT's were employed under collective bargaining agreements which, during part of the time period involved, specified a 56–hour work week. The city argued that the EMT's should not be entitled to overtime when they had agreed to work 56–hour weeks. The supreme court agreed, holding that when the EMT's had expressly agreed to work 56–hour weeks, they had waived their rights under article 1269p, but when their contracts did not set the hours to be worked, they were entitled to overtime under the statute. The city also argued that the EMT's were not entitled to include in their work weeks hours spent in on-the-job training. The supreme court disagreed, stating:

> The only inferable reason for denying overtime back pay for these periods

would be a reading of Art. 1269p, § 6 that somehow excluded on-the-job training from the ambit of compensable work. We do not believe that the statute is susceptible to such an unduly restrictive reading. Art. 1269p, § 6 simply distinguishes between fire employees that fight fires and those that do not. Any kind of *official work assignment* that does not include firefighting and exceeds the regular 40 hour week is compensable as overtime unless the Art. 1269p, § 6 right to a maximal 40 hour week has been waived under a [Fire and Police Employee Relations Act, Tex.Rev.Civ. Stat.Ann. art. 5154c–1, § 20] collective bargaining agreement....

> ... The City itself gave the critical trial testimony that the EMTs worked full-time 56 hour weeks as of the date of their assignment to the emergency medical service; that *such work included training periods;* and that they received no overtime pay. On this record alone, the EMTs made out a prima facie case for overtime compensation for all work periods, including training time, and should have received a judgment accurately reflecting all such overtime due them.

*Id.* at 121 (emphasis added). Thus, to determine whether activity by a member of the fire department was compensable, the supreme court used the standard of "official work assignment". Applying this standard, the supreme court held that on-the-job training was compensable.

The Corpus Christi court of appeals had occasion to apply this "official work assignment" standard in *Privitt v. City of Irving*, 666 S.W.2d 541 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). The issue in that case was whether the official work assignment of fire department dispatchers included fighting fires. The significance of the issue lay in the fact that, as noted in *Kierstead*, article 1269p, section 6 set the maximum work week for non-firefighting members of the fire department equal to the normal work week of other city employees, which was shorter than the maximum work week set by the statute for fire fighters.

Contending that their duties did not include fighting fires, but that they were required to work the longer hours of fire fighters, several dispatchers sued the city for overtime. The city asserted that as a matter of law, dispatchers' duties included fire fighting, and moved for summary judgment. The trial court granted the city's motion, but the court of appeals reversed because of the subsistence of a genuine fact issue. Speaking for the court, Chief Justice Nye wrote:

> Reading the summary judgment proof of both parties in light of the *Kierstead* opinion, we hold that there is a fact issue as to whether the fire equipment operators assigned to the communications section as dispatcher are considered to be an "official work assignment" as has been interpreted by our Supreme Court. If the appellants' "official work assignment" consists of firefighting and occasional dispatching, it appears that no overtime would be due. If the "official work assignment" meant being taken off firefighting and put on dispatching as the summary judgment shows, it would appear that overtime would be due. The fact issue presented is whether dispatching is itself an "official work assignment" or simply a part of a broader assignment as Fire Equipment Operator. ... Appellee did not show that as a matter of law that appellants' duty included firefighting.

*Id.* at 544. The appeals court also rejected the city's argument that fire fighters were entitled to overtime pay only for hours worked in emergencies. Again citing *Kierstead*, the court stated:

> The Supreme Court determined that any kind of official work assignment that did not include firefighting and exceeds a 40 hour work week is compensable. No distinction was made in this case between emergency and non-emergency hours worked.

*Id.* The case was remanded for trial on the merits.

Although *McGuire, Kierstead* and *Privitt* do not involve precisely the same issue now before us, none of these cases sup-

ports Spainhouer's argument that article 1269p, section 6 requires overtime pay for hours spent on call away from the job. On the contrary, the fire department employees in all three cases claimed overtime only for hours actually spent working on the job. *McGuire* holds that overtime pay is due a fire fighter who perform overtime, on-the-job *work.* *Kierstead* holds that article 1269p, section 6 requires extra compensation for overtime spent on an "official *work* assignment", like on-the-job training, and not simply an official assignment. The claim in *Privitt* was for time spent actually working on the job. Furthermore, *McGuire, Kierstead* and *Privitt* in no way moderate the statutory insistence, plainly expressed in the 1987 version and strongly suggested in the 1985 and pre–1985 versions, that a member of the fire department be paid only for time actually spent on the job and away from personal affairs. If anything, these cases reinforce this statutory requirement.

Two other cases, both from the Corpus Christi court of appeals, do appear to have involved very nearly the same issue now before us. In one, *Harrison v. City of Victoria,* 730 S.W.2d 119 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.), four non-firefighting members of the fire department claimed overtime pay for hours spent on call, off the job. The court, speaking as in *Privitt* through Chief Justice Nye, described their claim as follows:

> The City admitted in response to requests for admissions that the four employees were non-fire-fighters and that forty hours was the normal work week for city employees. It is also undisputed that the employees were required to be on call during their off-duty hours. The employees stated in their affidavits that, when not at work, they either carried a pager or radio, or telephoned in their whereabouts to the fire department. The employees claim they are entitled to overtime pay under the statute for the hours they were on call. The City asserts that they are not.

*Id.* at 120. The trial court granted summary judgment for the city. Citing *Kier-*

*stead,* the appeals court reversed, explaining:

> The statute provides that a non-firefighting employee is entitled to overtime pay when the employee is "required to remain available for immediate call to duty by continuously remaining in contact with a fire department office by telephone or radio."
>
> The affidavits of the four employees alleged that they were required to remain in continuous contact with their fire department. *The City contends on appeal that they were not in continuous contact and had too much freedom while on call to be considered working. The City also argues that their being on call does not amount to an official work assignment. These obviously involve material fact issues* which will have to be fully developed in a trial on the merits.
>
> We agree with the employees that they, as non-firefighters, may be entitled to overtime pay for hours spent "continuously in contact" with their fire department, if they can show at trial that they also meet the other statutory requirements. The summary judgment was improvidently granted.

*Id.* at 121 (emphasis added). Importantly, the court did not treat the *Kierstead* "official work assignment" standard as any different from the specific language of the statute. Moreover, the court did not reject the city's contentions, which are similar to those of the City of Dallas in the instant case. On the contrary, the court acknowledged the validity of those arguments by holding that they raised fact issues precluding summary judgment, and that the fire department employees would be entitled to recover on their claims only if they met the city's arguments.

The second case involving an issue similar to the one before us is *City of Brownsville v. Salazar,* 712 S.W.2d 577 (Tex.App. —Corpus Christi 1986, no writ), decided after *Privitt* but before *Harrison. Salazar* upheld an award of overtime pay to a fire inspector for hours spent on call, off the job. As in *Harrison,* the city argued that article 1269p, section 6 did not require overtime pay for on-call, off-the-job time. Unlike *Harrison,* a summary judgment case, *Salazar* was an appeal from a judgment rendered after a trial before the court. No findings of fact or conclusions of law having been requested or filed, the court of appeals summarized the evidence in support of the judgment as follows:

> Appellee testified regarding his "on-call" status, and introduced records of the times he was on-call during the time in question. He understood that "on-call" status meant to be prepared to go to the scene of the emergency whenever he was called, and understood that being "on-call" was a mandatory duty. Several witnesses testified with regard to the meaning of "on-call" as opposed to "call-back" status, emphasizing that to be "on-call" is a mandatory duty. Wherever appellee was located while "on-call," it is clear from the evidence that he was required to respond when contacted, and was entitled to overtime compensation by statute.

*Id.* at 579–580. From this evidence it is readily apparent that the appeals court considered the single controlling factor to be that the fire inspector's duty to respond to calls off duty when contacted was mandatory. Whether a fire department employee's on-call responsibilities are mandatory is not, under the statute or the cases, the controlling factor in determining entitlement to overtime compensation. Rather, the controlling factor, as stated variously in the pre–1985, 1985 and 1987 versions of the statute, as well as the cases, is whether the fire department employee's official work assignment requires such close and continuous contact with the fire department that he cannot effectively use the time for personal purposes. We cannot determine from the opinion in *Harrison* whether this standard which should have been determinative was met. To the extent that *Harrison* reaches a conclusion without resort to the controlling consideration, we choose not to follow it.

In sum, Spainhouer's cases, with one exception, do not hold that a member of a fire department whose duties do not include

fighting fires is entitled to be paid for on-call, off-the-job time. The one exception, *Harrison,* does not apply the determinative legal standard derived from the statute and the cases construing the statute. We find neither logic nor authority in these cases to deviate from our construction of the language of article 1269p, section 6. We remain convinced from the language of the statute that overtime pay is not prescribed except for work actually done on the job.

### III

The trial court granted Spainhouer summary judgment because it concluded that article 1269p, section 6 requires compensation for on-call, off-the-job time. We disagree with this conclusion and find no basis for recovery by Spainhouer on his claim in this case. Accordingly, we reverse the judgment of the trial court.

The City also moved for summary judgment. Unlike *Privitt,* the summary judgment record in this case reveals no genuine issue of fact. The City's evidence included an affidavit by the assistant chief of the fire department, who stated:

> During the times he is not actively working, but is subject to recall by the Dallas Fire Department, Freddie Spainhouer is required to remain accessible to the Fire Department by one of three methods: a pager he can carry on his person, a Fire Department radio in a vehicle that has been provided to him, or by home telephone. *He is not otherwise affected in his freedom or his movements and is not required to remain at his home or at any specific location. He is only required to remain within the immediate Dallas area, within the range of his pager.*

This testimony, albeit by an interested witness, "is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX.R.CIV.P. 166a. Spainhouer not only failed to controvert such evidence, but conceded its accuracy. As Spainhouer's counsel advised the trial court:

> [T]he stipulations, Your Honor, also clearly point out, and it is the intent of plaintiff and defendant here to say, that plaintiff has been paid his regular 40–hours-per-week salary. In addition, there are certain times when he was on call when he had been actually called out to do some emergency work, and he has been paid for those periods of time.
>
> The periods of time that we're talking about under this statute are the period of time for which he was on call by telephone, radio, or pager while he was in Dallas County, at home, wherever he might be, for which he has not been paid. Again, let me state for the record, he has been paid his regular 40 hours a week, and those emergencies to which he has been called out and to which he has responded he has been paid.

Spainhouer makes no claim for overtime pay for on-call time spent in such close or continuous contact with the fire department that he could not freely go about his personal business. The summary judgment record therefore establishes, without any genuine issue of fact, that Spainhouer does not meet the applicable standard for overtime pay under article 1269p, section 6. We sustain the City's points of error three, four and seven. Inasmuch as the City's motion for summary judgment should have been granted, we render judgment that Spainhouer take nothing by his claim against the City of Dallas.

BAKER, J., dissenting.

BAKER, Justice, dissenting.

The majority holds that a "proper" construction of the pre–1987 language of Texas Revised Civil Statute art. 1269p, section 6, results in the reversal of a money judgment in favor of appellee, Spainhouer and rendition of a take nothing judgment in favor of appellant, City of Dallas. I disagree with the majority's rationale of the "proper" construction of the statute at issue and therefore, dissent.

As a Dallas Fire Department photographer, Spainhouer was required to be on call during all periods he was not actually working, sick or on vacation from July 30,

1980, to June 23, 1984, and during every alternate week from June 24, 1984 to February 10, 1986. While on call, he was required to be available for contact by telephone at his home, by radio in his vehicle, or by a pager which he carried on his person. As a non-firefighting employee of the department, Spainhouer brought this action claiming the statute entitled him to back pay for hours spent "on-call" since July of 1980.

Spainhouer filed a motion for summary judgment on the theory that the statute applied to him as an employee whose duties did not include fighting fires. The City moved for summary judgment on the theory that the statute (prior to its amendment in 1985) applied only to firefighting personnel. The City's motion was denied, Spainhouer's motion was sustained and as a result of a non-jury trial on damages, Spainhouer recovered a money judgment for back pay for all hours spent on-call, totaling $477,841.60, plus interest. The trial court held that Spainhouer was entitled "to recover pay at time and one-half for 'any and all hours during which [he is] required to remain available for immediate call to duty' to the extent such hours exceed the 'normal work week' applicable to him." This holding by the trial court sustained Spainhouer's argument and rejected the City's theory.

The majority holds that the statute, when "properly construed" does not entitle Spainhouer to be paid for hours not actually worked on the job. The majority contends that Spainhouer's argument ignores the plain words of the pre–1987 statute and holds that those provisions require overtime pay only for hours actually *worked* in excess of the maximum set by the statute. The majority further states the statute nowhere requires the city to pay members of the fire department for hours not spent on the job. The majority contends that this distinction between hours actually worked and hours free for personal use subject to call was drawn more clearly by the Legislature in its 1987 amendments to section 6 of the act, and states that the amendment makes clearer that by the pre–1987 language, "available for immediate call to duty by continuously remaining in contact with the fire department office by telephone or by radio," the Legislature meant "on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes." The majority states the amendment demonstrates that the Legislature never intended to require cities to pay members of the fire department overtime for hours during which they were merely "accessible."

The majority further contends that to construe the pre–1987 statute, as claimed by Spainhouer would yield a foolish and absurd result. The majority asserts that the language of the applicable section requires payment only for hours worked, as anyone would certainly expect. The majority asserts it would be a foolish statute indeed that obligates tax-payers to pay a fire department photographer nearly half a million dollars in overtime pay for twenty-four hours a day everyday for nearly six years, simply because a photographer *might* have been called to work.

Paraphrasing Justice C.L. Ray in a recent case, the vice in all this, apart from its obvious nature as dicta, is that the majority substitutes its rationale of what the Legislature must have intended for the consequences of what the Legislature plainly did. Actions speak louder than words and here we do not even have words; only the active imagination of the majority and what it deduces must have been the Legislature's intent regarding the pre–1987 versions of the statute. *See State v. Preslar,* 751 S.W.2d 477, 483–84 (Tex.1988) (Ray, concurring opinion).

In my view, the Supreme Court's interpretation of the pre–1987 statute in *Kierstead v. City of San Antonio,* 643 S.W.2d 118 (Tex.1982) is determinative of this appeal and, when "properly" applied to the facts in this case, dictates an affirmance of the trial court's judgment.

In *Kierstead,* the Supreme Court held that:

> Art. 1269p, § 6 simply distinguishes between fire employees that fight fires and those who do not. Any kind of *official*

*work assignment* that does not include firefighting and exceeds the regular 40 hour week is compensable as overtime unless the Art. 1269p, § 6 right to a maximum 40 hour week.

Although the majority recognizes that to determine whether activity by a member of the fire department is compensable, the Supreme Court uses the standard of "official work assignment," it then proceeds to run roughshod over that standard in its haste to apply its interpretation of the statute in order to avoid what the majority considers is a foolish and absurd result. In my view, the majority goes far afield from its function as intermediate appellate court; because it, although recognizing the standard established by the Texas Supreme Court in *Kierstead,* proceeds to ignore it when applied to the facts in this case.

As stated, the standard, pre–1987, is "any kind of *official work assignment* that does not include firefighting and exceeds the forty hour week is compensable as overtime unless the right to a maximum forty hour week has been waived." Spainhouer's summary judgment evidence established the following: (1) that non-firefighting employees and most City of Dallas employees work a normal work week of forty hours per week; (2) that he was a photographer for the Dallas Fire Department and his duties with the department at no time included fighting fires; (3) that he was on call seven days per week, twenty-four per day from June 30, 1980 to June 23, 1984; (4) that he was on call seven days per week, twenty-four hours per day during alternate weeks from June 24, 1984 to February 10, 1986; (5) that he was required to be on call during the period specified and that he was required to be on call by telephone in his home, by the radio in his vehicle, and by a pager device; (6) that he was provided a specially equipped fire department automobile, was issued special fire protection equipment, was issued a fire department identification card to allow him to go into restricted areas and was provided a uniform identifying him as a fire department employee; (7) that the pager that he carried operated through a special fire department paging system.

Spainhouer's on-call was not voluntary but was required by the city as part of his job responsibility. Of great significance and importance is that at oral argument, the city conceded and did not dispute that Spainhouer's on-call duty was mandatory and part of his "official work assignment." It was also conceded by the city that there was no circumstances that could be invoked as a waiver of whatever rights Spainhouer had under article 1269p, section 6. Thus, it is without dispute that Spainhouer's on-call duty was part of his "official work assignment" and that he was on call in excess of a forty-hour regular work week. Since his on-call duty was part of his official work assignment, I would hold that Spainhouer is entitled to compensation at overtime rates for any time in excess of a forty hour week. *See Kierstead v. San Antonio,* 643 S.W.2d at 121. I am further of the opinion that the majority's reasoning in attempting to distinguish the other authorities relied upon by Spainhouer is faulty; and, to the contrary, believe that those cases apply the standard established by the Supreme Court as it should be applied in this case. *See City of Brownsville v. Salazar,* 712 S.W.2d 577 (Tex.App.—Corpus Christi 1986, no writ); and *Privitt v. City of Irving,* 666 S.W.2d 541 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

Because of the foregoing reasons, the trial court's judgment should be affirmed.